Tiffany JOHNSON

v.

**CITY OF CHESTER, et al.**

**Civil Action No. 98–1338.**

United States District Court,
E.D. Pennsylvania.

July 31, 1998.

which alleges violations of 42 U.S.C. § 1983 and state law claims against the City of Chester, its Mayor, Aaron Wilson, Jr., and its Commissioner of Police, Wendell Butler. The complaint alleges that defendants improperly charged Johnson with, and twice-prosecuted her unsuccessfully for, disorderly conduct arising out her statement at a City Council meeting that Mayor Wilson was an "ignorant bastard." For the reasons detailed below, we will grant defendants' motion in part, and deny it in part.

In considering a motion to dismiss, we must under Fed.R.Civ.P. 12(b)(6) take all allegations contained in the complaint as true and construe them in a light most favorable to the plaintiff. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 66 (3d Cir.1986).

### I. *Factual Background*

Accepting plaintiff's factual allegations as true for the purposes of this motion, the facts underlying her claim are not complicated. We quote the salient paragraphs of Johnson's complaint.

8. Ms. Johnson is a member of a citizens' group called Chester Residents Concerned for Quality Living ("CRCQL"). On or about February 19, 1997, CRCQL sent a letter to Wilson and to council members of the City of Chester relating to CRCQL's concern that they had not attended a hearing conducted by the Department of Environmental Protection relating to a soil processing facility to be built in the City of Chester. Wilson never responded to CRCQL's letter.

9. On or around March 13, 1997, Ms. Johnson attended a Chester [C]ity [C]oun-

Barry H. Dyller, Wilkes–Barre, PA, for Plaintiff.

Sheryl L. Brown, Media, PA, for Defendants.

### MEMORANDUM

DALZELL, District Judge.

Defendants here move for dismissal of selected counts of Tiffany Johnson's complaint,

cil meeting. Ms. Johnson questioned Wilson as to why neither he nor council members responded to CRCQL's letter. Wilson refused to answer the question, and Ms. Johnson politely persisted. Wilson continually responded by stating "I choose not to respond." He then pounded his gavel and requested that the next person speak.

10. Frustrated that Wilson had directly refused to answer her questions, Ms. Johnson walked away, and called Wilson an "ignorant bastard." Wilson then asked Ms. Johnson to leave the public meeting. When Ms. Johnson did not leave, Wilson adjourned the meeting.

11. Wilson subsequently spoke with Butler, and the two of them decided to charge Ms. Johnson with disorderly conduct. Butler subsequently followed though on his agreement with Wilson, by charging Ms. Johnson with Disorderly Conduct, 18 Pa. C.S. § 5503 [sic ] ....

. . .

14. On April 14, 1997 plaintiff was tried before the Honorable William Day.[1] After the first witness was sworn, it became apparent that the Commonwealth could not present a viable case. District Justice Day dismissed the charge.

15. Not satisfied with the result, defendants re-filed the charge against Ms. Johnson .... Ms. Johnson and her lawyers filed a motion to dismiss the charges on double jeopardy grounds. On June 30, 1997, the scheduled trial date, the district court dismissed the second set of charges.

*Compl.* at ¶¶ 8–11, 14, 15.

On March 13, 1998, plaintiff filed this action, alleging violations of 42 U.S.C. § 1983 (counts one and two), conspiracy to violate § 1983 (count three), false imprisonment or arrest (count four), malicious prosecution (count five), abuse of process (count six), and intentional infliction of emotional distress (count seven).

1. William L. Day is a District Justice in Chester County, Pennsylvania. *See Pa. Bar Ass'n 1998 Legal Directory* at 565.

2. The two cases that defendants do cite from our Court of Appeals were decided more than a decade before *Leatherman.*

## II. *Legal Analysis*

### A. *More Definite Statement*

■ Defendants first move for a more definite statement of plaintiff's claims, arguing that "the Third Circuit has developed a more stringent standard involving civil rights cases." *Mot. Dismiss* at 2 (citing cases). Defendants' argument, however, fails to account for the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993),[2] in which Chief Justice Rehnquist, writing for a unanimous Court, held that the Federal Rules of Civil Procedure "do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius.*" *Id.,* 113 S.Ct. at 1163. Thus, plaintiff's claims alleging municipal liability are not subject to a heightened pleading standard beyond that provided in Fed. R.Civ.P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

While the Supreme Court in *Leatherman* expressly noted that it had "no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials," *id.,* 113 S.Ct. at 1162, we think that the gravaman of the Court's ruling is in its Latin invocation,[3] which seems to defer exclusively to Congress and the Federal Rules of Civil Procedure when it comes to enhancing the requirements for pleading certain actions. Thus, we decline to impose a heightened pleading standard found in neither the Federal Rules nor the Supreme Court's cases. *Accord Coades v. Jeffes,* 822 F.Supp. 1189, 1192 (E.D.Pa.1993)(citing *Leatherman* ); *cf. Brader v. Allegheny Gen-*

3. Black's Law Dictionary defines *"Expressio unius est exclusio alterius "* as "[a] maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another." *Id.* at 581.

*eral Hosp.*, 64 F.3d 869, 876–77 (3d Cir.1995)(noting in an antitrust case that "impatience with the notice pleading embodied in the Federal Rules is foreclosed by the Supreme Court's decision in *Leatherman* "); *see generally* Karen M. Blum, *Heightened Pleading: Is There Life after Leatherman?,* 44 Cath. U.L.Rev. 59 (Fall 1994).

Since we conclude that, at a minimum, the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), we now move to consider defendants' argument that the City of Chester should be dismissed as a defendant.

## B. *Dismissal of the City of Chester*

Defendants argue that "[p]laintiff never asserted that the City of Chester had a policy in effect which was violative of [p]laintiff's rights. Plaintiff only sets forth the singular acts of" defendants Butler and Wilson, *Br. Supp. Mot. Dismiss* at 3, and thus the City of Chester should be dismissed as a defendant. *Id.*

■ Defendants are correct that a governmental entity may not be held liable pursuant to § 1983 under the doctrine of *respondeat superior. Monell v. Department of Social Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Andrews v. Philadelphia,* 895 F.2d 1469, 1476 (3d Cir.1990). Rather, "section 1983 liability attaches to a municipality only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Andrews,* 895 F.2d at 1480 (quoting *Monell,* 98 S.Ct. at 2037). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id.* (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)).[4]

■ While the complaint does not allege that plaintiff's injuries resulted from "an offi-

cial proclamation, policy, or edict," it does allege that the individual defendants who personally took action on behalf of the City were its Mayor and Police Commissioner, and noting the obvious reality that they were "policymakers" of the City, *Compl.* at ¶¶ 5–6, a characterization the defendants do not dispute. *Cf. Andrews,* 895 F.2d at 1481 (finding that the "Police Commissioner was a policymaker"). "A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy." *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir.1989)(citing *Pembaur,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (county attorney's decision to have sheriffs enter premises established official policy)). Thus, the actions of the Chester Mayor and Police Commissioner, in allegedly twice prosecuting Johnson for disorderly conduct, may be regarded as policymaking actions attributable to the City of Chester. Therefore, the City of Chester is, at least at this point, a proper defendant in this action.

## C. *Punitive Damages*

■ Although the City of Chester remains a defendant here, Johnson may not recover punitive damages against it. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981); *see also Bolden v. SEPTA,* 953 F.2d 807, 829–31 (3d Cir.1991)(discussing *Newport* ). Plaintiff does not oppose that aspect of the City's motion, so we will dismiss that claim without further comment.

## D. *Qualified and Legislative Immunity*

Defendants next seek qualified immunity for Police Commissioner Butler, and both legislative and qualified immunity for Mayor Wilson, for their alleged actions.

■ "Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, ... the district court should resolve any immunity question at the earliest possible stage of the litiga-

---

**4.** Plaintiff does not argue that municipal liability here is based upon actions taken pursuant to

established custom.

tion." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) and *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987)). Defendants have the burden of pleading and proving qualified immunity. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir.1984)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)).

■ "[G]overnment officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; [5] *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)(holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)(holding that officials are immune unless "the law clearly proscribed the actions" they took). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action," *Creighton*, 483 U.S. at 640, 107 S.Ct. at 3038 (1987)(quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739), based on the information the official actually possessed at the time. *Id.*, 102 S.Ct. at 2740.

■ As we summarized this jurisprudence in *Wilkinson v. Bensalem Township*, 822 F.Supp. 1154 (E.D.Pa.1993):

> When analyzing a claim of qualified immunity, we must "first ... identify the specific constitutional right allegedly violated, then ... inquire whether at the time of the alleged violation it was clearly established,

then further ... inquire whether a reasonable person in the official's position would have known that his conduct would violate that right." *Collinson*, 895 F.2d at 998 (Phillips, J., concurring). The first two prongs of this inquiry are pure questions of law for the court to decide. *See id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 637–43, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987)); *Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985). The third prong is an application of *Harlow*'s objective standard, which sometimes requires courts to make factual determinations concerning a defendant's conduct and its circumstances, but ultimately it, too, devolves into a matter of law for the court. *See Collinson*, 895 F.2d at 998 (Phillips, J., concurring); *Creighton*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6.

*Id.* at 1157.

■ "The dispositive issue in these types of cases is [typically] whether the right at issue was 'clearly established' at the time the official acted," *Orsatti*, 71 F.3d at 483, and in making that determination, "the proper focus is not upon the rights at its most general or abstract level, but upon its application to the particular conduct being challenged." *Collinson*, 895 F.2d at 998 (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3038–39). As set forth *infra*, Johnson has sufficiently alleged that defendants charged and prosecuted her for exercising her right to free expression under the First and Fourteenth Amendments. She has also alleged— and this motion does not challenge—that defendants knowingly and in violation of her Fifth Amendment rights placed her in double jeopardy by prosecuting her a second time on those same charges. Such rights are among the most well-known and clearly-established in our Constitution. Thus, the complaint's allegations satisfy prongs one and two of the test we summarized in *Wilkinson*.

5. Government officials are accorded qualified rather than absolute immunity in order to accommodate two important interests: the officials' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages, and the

public's interest in recovering damages when government officials unreasonably invade or violate individual rights under the Constitution and laws of the United States. *Orsatti*, 71 F.3d at 483 (citing *Creighton*, 483 U.S. at 639, 107 S.Ct. at 3039).

As to prong three, Mayor Wilson argues that the fact that Johnson sought to express herself at a public meeting modifies the context—and therefore objective reasonableness—of her First and Fourteenth Amendment claim. Mayor Wilson argues that he—like his counterpart in *Wilkinson, see id.* at 1156—asked Johnson to leave the Council meeting based on his belief that, acting as legislator, he could impose reasonable time, place, and manner restrictions on plaintiff's speech in that public forum, so long as they were content-neutral and narrowly tailored to serve a significant governmental interest. *See id.* at 1157 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–6, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)); *see also Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293–95, 104 S.Ct. 3065, 3069–70, 82 L.Ed.2d 221 (1984); *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981). To bolster his position as to plaintiff's First and Fourteenth Amendment claims, Mayor Wilson cites *Collinson v. Gott,* 895 F.2d 994 (4th Cir.1990)(*per curiam* ), in which a fractured Fourth Circuit (each judge on the three-judge panel filed a separate opinion) upheld a grant of qualified immunity to a County Commissioner who had ejected the plaintiff from a public meeting.

We need not, however, reach that question—which is the same question we addressed in *Wilkinson* at length, *see id.* at 1158—because Johnson is not complaining about defendants' actions during the meeting. Rather, she takes issue with thereafter being charged with, and prosecuted for, disorderly conduct for her actions at the meeting. *See Opp'n Mot. Dismiss* at 17. Whatever defendants' ultimate justification (if any) for the disorderly conduct charge, it cannot have been based on time, place, and manner restrictions on speech in a public forum, because the defendants did not act contemporaneously with that public speech. Under the First Amendment, the issue here is not plaintiff's right to be free from restrictions on her speech at the hearing, but rather her right to be free from post-speech retaliatory prosecutions.

■ For similar reasons, we reject Mayor Wilson's claim of legislative immunity,[6] because the actions of which Johnson here complains—namely, the two prosecutions—took place outside the presence and scope of Mayor Wilson's legislative function,[7] *Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951)(finding legislative immunity because legislators were "acting in a field where legislators traditionally have power to act"); *see also Ryan v. Burlington County,* 889 F.2d 1286, 1290 (3d Cir.1989) ("It is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity.").

■ As to Mayor Wilson's claim that he had probable cause to issue Johnson a citation for disorderly conduct pursuant to 18 Pa. Cons.Stat. § 5503, and thus is entitled to qualified immunity, we conclude that the record is not ripe for such a determination. Although the doctrine of qualified immunity shields officials' actions even if they "reasonably but mistakenly conclude that probable cause is present," *Anderson,* 107 S.Ct. at 3039, we simply have no information regarding what discussions took place between Police Commissioner Butler and Mayor Wilson, and whether they constitute valid probable cause or "mistaken probable cause" to issue a citation for disorderly conduct.[8] Thus, Police Commissioner Butler has failed to carry his burden of demonstrating that his actions

---

**6.** We recognize that the doctrine of legislative immunity applies to municipal legislators. *Aitchison v. Raffiani,* 708 F.2d 96, 98 (3d Cir.1983).

**7.** "A mayor, although generally the executive officer of a municipality, may also have legislative functions." *Id.* at 99. Johnson does not dispute that Mayor Wilson, in presiding over the City Council meeting, was acting in a legislative capacity.

**8.** Although defendants have argued that, as a matter of *procedure,* criminal proceedings for summary offenses may be initiated by issuance of a citation, *see* Pa. R.Crim. P. 51(a), their brief is devoid of argument that the citation was *substantively* supported by probable cause. *See, e.g., United States v. McDermott,* 971 F.Supp. 939, 941–43 (E.D.Pa.1997)(analyzing "whether certain vulgarisms in particular contexts are 'obscene' " or "fighting words" under § 5503(a)(3)).

were objectively reasonable, and thus he is not is entitled to qualified immunity.[9]

Accordingly, we find that Johnson has adequately pleaded the violation of clearly-established constitutional rights, i.e., the First, Fifth, and Fourteenth Amendments, and that reasonable officials in defendants' positions would have known that their conduct, as alleged, would violate those rights.[10]

### E. *42 U.S.C. § 1983 Claims*

Defendants next move for dismissal of counts one and two of the complaint, which allege violations of 42 U.S.C. § 1983 [11] and plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights. Defendants offer no argument, however, why plaintiff's Fifth Amendment claims in count two should be dismissed, and therefore we omit that aspect of plaintiff's complaint from our consideration.

#### 1. *First Amendment Violations*

■■■■■ Defendants first argue, without citation to authority, that Johnson has failed to state a claim for violation of her First Amendment rights because "[p]laintiff admits she was given an opportunity to speak, finished, was walking away, and called Defendant Wilson an 'ignorant bastard.' Based upon the facts set forth at the meeting, there is no basis for a First Amendment violation." *Br. Supp. Mot. Dismiss* at 7. This argument is specious, however, because it ignores Johnson's allegations—which we are required to accept as true—that "[Mayor] Wilson subsequently spoke with Butler, and the two of them decided to charge Ms. Johnson with disorderly conduct" for her actions at the meeting. *Compl.* at ¶ 11. It is beyond cavil that the "institution of criminal action to

penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983." *Losch v. Borough of Parkesburg,* 736 F.2d 903, 907–08 (3d Cir.1984) (citing *Wilson v. Thompson,* 593 F.2d 1375, 1377 (5th Cir.1979)); *see also Moore v. Valder,* 65 F.3d 189, 193 (D.C.Cir.1995) (distinguishing claim of retaliatory prosecution from malicious prosecution claim); *see, e.g., Cohen v. California,* 403 U.S. 15, 18, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, *reh'g denied,* 404 U.S. 876, 92 S.Ct. 26, 30 L.Ed.2d 124 (1971)(reversing a defendant's conviction for displaying on his jacket the words "Fuck the Draft" because, *inter alia,* "the State certainly lacks power to punish Cohen for the underlying content of the message the inscription conveyed"); *McDermott,* 971 F.Supp. at 940 and n. 5, 943 (holding that the defendant's use of "salty sailor talk," including the phrases "[t]his is bullshit," "what the fuck is going on", and "I'm not fucking going anywhere," while "rude, discourteous, ill-mannered, coarse and boorish, ... is not without constitutional protection"); *id.* at 943 ("It is one thing to be called vulgar for one's words, but it is quite another to be held a criminal for them."). Thus, the complaint, which alleges that defendants prosecuted Johnson for disorderly conduct for speaking out at the March 13, 1997 Council meeting, may be construed as a claim for retaliatory prosecution viable under § 1983. *See Moore,* 65 F.3d at 196 n. 12 (citing cases).

#### 2. *Fourth Amendment Violations*

■■■ Defendants also seek to dismiss Johnson's claims of malicious prosecution in violation of the Fourth Amendment, arguing that she has failed to allege a deprivation of

---

9. Furthermore, plaintiff's Fifth Amendment Double Jeopardy claims—which are not challenged in this motion—are even farther outside the ambit of *Collinson 's* protections.

10. It is significant that defendants assert their claims for qualified immunity in the posture of a motion to dismiss. Although we are required to address these claims at the earliest possible juncture, *see Orsatti,* 71 F.3d at 483, claims of immunity are normally best analyzed—and therefore undoubtedly will be revisited—on motions for summary judgment, when "the material facts are not in dispute." *Id.* at 483; *see, e.g., Anderson,*

107 S.Ct. at 3038 (reviewing grant of summary judgment); *Orsatti,* 71 F.3d at 481 (same); *Losch,* 736 F.2d at 906 (same); *Wilkinson,* 822 F.Supp at 1157 (denying summary judgment).

11. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994)(quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)).

liberty of constitutional dimensions.[12] Plaintiff concedes that she "was not physically seized or incarcerated at all," *Opp'n Mot. Dismiss* at 14, but argues that Justice Ginsburg's concurrence in *Albright*, which "suggests that someone in [plaintiff's] position suffers a 'seizure' under the Fourth Amendment, even while not in physical custody, as long as the criminal charges against him remain pending," *Torres v. McLaughlin*, 966 F.Supp. 1353, 1360 (E.D.Pa.1997), precludes such a requirement.

As the parties are both aware, we have twice-traversed this ground exhaustively, *see Torres*, 966 F.Supp. at 1357–64; *Gallo*, 975 F.Supp. at 726–31, and concluded that:

> Absent any constitutionally-significant pretrial restraints on [plaintiff's] liberty, the weight of federal authority (at least as it stands today) holds that [plaintiff] may not maintain a § 1983 claim for malicious prosecution based on the pre-incarceration time period.

*Torres*, 966 F.Supp. at 1364; *see also Gallo*, 975 F.Supp. at 728; *Mateiuc v. Hutchinson*, No. Civ. A. 97–1849, 1998 WL 240331, at *2 (E.D.Pa. May 14, 1998)(adopting *Torres* and *Gallo* ); *Ganci v. Borough of Jenkintown*, No. Civ. A. 95–0262, 1998 WL 175881, at *3 (E.D.Pa. Apr.14, 1998)(adopting *Torres* ); *Taylor v. City of Philadelphia*, No. Civ. A. 96–740, 1998 WL 151802, at *7 nn. 7 & 8 (E.D.Pa. Apr.1, 1998)(same). *But see Trueman v. Lekberg*, No. Civ. A. 97–1018, 1998 WL 181816, at *2 n. 7 (E.D.Pa. Apr.16, 1998).

In *Torres*, we held that "[h]aving to appear in state court for ... preliminary hearings, arraignment and trial"—the only "restraints" plaintiff alleges here—did not amount to a constitutionally-significant seizure under the Fourth Amendment. *Id.* at 1364; *see also Gallo*, 975 F.Supp. at 729, 731 (holding that having to sign a bond, having to appear in federal court for arraignment and trial, and being prohibited from traveling beyond the Commonwealth and New Jersey ("a land area much larger than Denmark") did not amount to a constitutionally-cognizable seizure), *id.* at 728–29 (citing cases, including Chief Judge Posner's comment in *Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir.1992), that "if Denmark was a dungeon to Hamlet ... we suppose Illinois could be a prison to Kevin Albright"). Plaintiff has offered neither more compelling facts nor intervening persuasive authority to warrant our pushing this rock up the hill again. Thus, *Torres* and *Gallo* compel us to dismiss plaintiff's Fourth Amendment claims.

### F. Conspiracy to Violate 42 U.S.C. § 1983

Defendants also move to dismiss count three of the complaint, which alleges that "[d]efendants Butler and Wilson, acting under color of state law, conspired with each other to violate Ms. Johnson's rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution." *Compl.* at ¶ 26. This argument is wholly derivative, in that it rests on defendants' prior arguments that (a) Johnson may not maintain a cause of action based on any of constitutional Amendments she seeks to invoke, and (b) she has failed to plead the conspiracy with a heightened degree of specificity. Since we have, *inter alia*, allowed Johnson's § 1983 causes of action based on the First, Fifth, and Fourteenth Amendments to go forward, we dismiss this argument on its own terms without further analysis.

### G. False Imprisonment or Arrest

Defendants next ask that we dismiss count four of the complaint, which alleges common-law "false imprisonment or arrest" against all defendants. *See Compl.* at ¶¶ 28–31. Johnson "concede[s] that [she] was not physically seized or incarcerated at all" in this case, *Opp'n Mot. Dismiss* at 14, and does not oppose this aspect of defendants' motion to

---

12. "There is no Fourteenth Amendment substantive due process right to be free from malicious prosecution." *Gallo v. City of Philadelphia*, 975 F.Supp. 723, 726 (E.D.Pa.1997) (citing *Albright*, 510 U.S. at 269–71, 114 S.Ct. at 811). Plaintiff has made clear that she is not asserting such a claim under the Fourteenth Amendment; rather, plaintiff "referred to the Fourteenth Amendment in the Complaint only to the extent that the Court might consider it necessary as having incorporated the First, Fourth, and Fifth Amendments to be applicable to the states." *Opp'n Mot. Dismiss* at 18 n. 4.

dismiss, so we will grant the motion as to that count. *See Renk v. Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994)(requiring "detention of another person" as an element of false imprisonment or arrest).

### H. *Intentional Infliction of Emotional Distress*

Lastly, defendants argue that plaintiff's claim for intentional infliction of emotional distress is defective because she has failed to allege that defendants' conduct caused her to seek medical treatment. Although the Pennsylvania Supreme Court has not adopted section 46 of the Restatement (Second) of Torts ("Outrageous Conduct Causing Severe Emotional Distress"), it *has* concluded that a necessary prerequisite of such a claim is that, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 995 (1987). Panels of the Pennsylvania Superior Court have divided on the issue of whether a failure to allege that plaintiff sought medical treatment subjects that count to dismissal. *Compare Britt v. Chestnut Hill College*, 429 Pa.Super. 263, 632 A.2d 557, 562 (1993)(dismissing action) *with Hackney v. Woodring*, 424 Pa.Super. 96, 622 A.2d 286 (1993)(denying motion to dismiss); *see also Lujan v. Mansmann*, 956 F.Supp. 1218, 1227 (E.D.Pa.1997) (denying motion to dismiss). Johnson did not, however, respond to this aspect of defendants' motion, and therefore we will grant it as unopposed and dismiss this count.

An appropriate Order follows.

### ORDER

AND NOW, this 31st day of July, 1998, upon consideration of defendants' motion to dismiss, and plaintiff's response in opposition thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART in that:

1. The motion to dismiss defendant City of Chester is DENIED, except the motion to dismiss punitive damages claims against defendant City of Chester is GRANTED;

2. The motions to dismiss defendants Wilson and Butler is DENIED WITHOUT PREJUDICE;

3. The motion to dismiss Count One is GRANTED only as to plaintiff's Fourth Amendment claims, and as to plaintiff's Fourteenth Amendment substantive due process claims;

4. The motion to dismiss Count Two is GRANTED only as to plaintiff's Fourth Amendment claims, and as to plaintiff's Fourteenth Amendment substantive due process claims;

5. The motion to dismiss Count Three is DENIED;

6. The motion to dismiss Count Four is GRANTED AS UNOPPOSED; and

7. The motion to dismiss Count Seven is GRANTED AS UNOPPOSED.