71 F.3d 480
 Arnold ORSATTI, Jr. and Rebecca Orsatti, Appellees,
v.
NEW JERSEY STATE POLICE; David V. Brody, Deputy Attorney
General of the State of New Jersey; Joseph Guzzardo, New
Jersey State Police Officer; Robert Kirvay, New Jersey
State Police Officer; Albert Black; and Clinton L. Pagano,
Former Superintendent of New Jersey State Police,
Robert Kirvay and Joseph Guzzardo, Appellants.
 No. 94-5757.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 20, 1995.
Decided Nov. 22, 1995.
 
 1
 Carl Greenberg (argued) and Darryl Beckman, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, for Appellant Robert Kirvay.
 
 
 2
 George F. Kugler (argued) and John C. Connell, Archer & Greiner, Haddonfield, NJ, for Appellant Joseph Guzzardo.
 
 
 3
 Louis M. Barbone (argued) and Lynn Marie Handler, Jacobs & Barbone, Atlantic City, NJ, for Appellees Arnold Orsatti, Jr. and Rebecca Orsatti.
 
 
 4
 Before: BECKER and COWEN, Circuit Judges, and LANCASTER, District Judge.[1]
 
 OPINION OF THE COURT
 
 5
 LANCASTER, District Judge.
 
 
 6
 This case arises under the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983. Plaintiff-appellee, Arnold Orsatti, Jr., alleges that he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure. Defendant-appellants, New Jersey State Police Officers Robert Kirvay and Joseph Guzzardo, appeal from the district court's order denying their joint motion for summary judgment. The officers contend that the district court erred because they are shielded from Orsatti's claim by the doctrine of qualified immunity.
 
 
 7
 Because we find that the undisputed material facts of record establish that it was objectively reasonable for the officers to conclude that they had probable cause to arrest Orsatti, we hold that the officers are immune from Orsatti's claim. Accordingly, we reverse.
 
 I.
 
 8
 The complete factual and procedural background of this case is considerably more complex than the court's treatment here. What follows, however, are those facts and procedures material to the issue on appeal.
 
 
 9
 In December of 1988, New Jersey State Police began an investigation, named "Operation Comserv," into alleged bribery, corruption, and other misconduct by Atlantic City, New Jersey public officials. Officers Kirvay and Guzzardo were in charge of the investigation; however, the principal operative was Albert Black, a government confidential informant. The investigation culminated on July 27, 1989, with the arrest of eight individuals, including Orsatti.
 
 
 10
 Orsatti and the others were arrested pursuant to criminal complaints and warrants issued by the Superior Court of New Jersey. In the aggregate, these criminal complaints alleged a variety of corrupt acts. However, the complaint issued against Orsatti charged him only with official misconduct under N.J.Stat.Ann. 2C:30-2 and conspiracy to commit official misconduct under N.J.Stat.Ann. 2C:5-2, and the complaint related only to his role in attempting to acquire for Black a gift shop concession contract at the Atlantic City Airport. At the time of his arrest, Orsatti was an Atlantic City Councilman and Chairman of the City Council Transportation Committee.
 
 
 11
 Thereafter, a State Grand Jury returned indictments against each of those arrested. The Grand Jury indicted Orsatti for conspiracy to commit racketeering in violation of N.J.Stat.Ann. 2C:41-2(d) and conspiracy in violation of N.J.Stat.Ann. 2C:5-2. The case against all criminal defendants was called to trial on April 22, 1991. Following the close of the State's case, the trial judge granted a judgment of acquittal to Orsatti and several of the other criminal defendants. Eventually, the jury acquitted all of the remaining criminal defendants, save one, of the charges.
 
 
 12
 Thereafter, Orsatti filed this civil rights action. Orsatti's complaint is broad in scope and asserts claims under both federal and state law. Moreover, he challenges virtually every aspect of his investigation, arrest, and prosecution, and he names as defendants essentially every individual involved in Operation Comserv. In this appeal, however, we are only concerned with Orsatti's claim that Kirvay and Guzzardo violated the Fourth Amendment prohibition against unreasonable seizures. Specifically, Orsatti alleged that the officers carried out Operation Comserv in a negligent and incompetent manner. Orsatti further alleged that the officers had neither probable cause to arrest him, nor an objective good faith belief that he was guilty of the offense charged.
 
 
 13
 At the close of discovery, Kirvay and Guzzardo filed a joint motion for summary judgment contending that they are entitled to judgment on Orsatti's unlawful arrest claim under the doctrine of qualified immunity. The district court denied the motion and held that whether the officers were entitled to immunity rested upon disputed questions of fact that the jury had to resolve. This appeal followed.
 
 II.
 
 14
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 to review an order denying a claim of immunity raised by a defendant in a motion for summary judgment. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985). The standard of review applicable to an order denying summary judgment is plenary, Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir.1993), and "[o]n review, the appellate court is required to apply the same test the district court should have utilized initially." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976).
 
 
 15
 Summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 16
 An otherwise properly supported motion for summary judgment will not be defeated by the mere existence of some factual dispute between the parties. However, a dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id.
 
 III.
 A.
 
 17
 Kirvay and Guzzardo argue that the district court erred in denying their joint motion for summary judgment. They contend that they are immune from Orsatti's suit because the undisputed material facts of record establish that they were objectively reasonable in concluding that probable cause existed to arrest Orsatti for the crime of official misconduct. We agree.
 
 
 18
 The general principles of law that govern this case are well settled. Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Papachristou v. City of Jacksonville, 405 U.S. 156, 169, 92 S.Ct. 839, 847, 31 L.Ed.2d 110 (1972). Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. See United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir.1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir.1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254, n. 9, 60 L.Ed.2d 824 (1979)). When a police officer does arrest a person without probable cause, the officer may be liable in a civil rights suit for damages. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).
 
 
 19
 Nevertheless, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Government officials, such as police officers, are accorded qualified rather than absolute immunity in order to accommodate two important interests: the officials' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages, and the public's interest in recovering damages when government officials unreasonably invade or violate individual rights under the Constitution and laws of the United States. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 20
 Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), the district court should resolve any immunity question at the earliest possible stage of the litigation. Creighton, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. When the material facts are not in dispute, the district court may decide whether a government official is shielded by qualified immunity as a matter of law. Id.
 
 
 21
 Typically, the dispositive issue in these types of cases is whether the right at issue was "clearly established" at the time the official acted. In this case, however, there is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of Orsatti's arrest. Finding that the right at issue was clearly established, however, does not end the court's inquiry. Nor does the court's decision turn merely on whether the official violated that clearly established right. On the contrary, the Supreme Court has recognized that it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present. The Court has made clear that in such cases those officers, like other officials who act in ways they reasonably believe to be lawful, will not be held personally liable. Id. at 641, 107 S.Ct. at 3039, 3040.
 
 
 22
 In Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court, in a damage action under 42 U.S.C. Sec. 1983, established the degree of immunity to be accorded a police officer who arrests a citizen after presenting a judge with a complaint and supporting affidavit that allegedly fails to establish probable cause. The Court held that whether a police officer is immune is governed by the same standard of objective reasonableness that applies in the context of a suppression hearing under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). Under this standard, only where the warrant application is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," will the officer lose the shield of immunity. Malley, 475 U.S. at 341, 106 S.Ct. at 1096. The Court further held that the standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions. Id. at 345, 106 S.Ct. at 1098.
 
 
 23
 According to this standard, the qualified immunity doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Id.
 
 B.
 
 24
 In this case, the district court held that Kirvay and Guzzardo were not entitled to summary judgment on their qualified immunity defense for two distinct reasons. First, the district court found that summary judgment was improper "because the plaintiff's allegations suffice to allege conduct that violated the clearly established constitutional right to be free from arrest without probable cause ..." Orsatti v. New Jersey State Police, No. 91-3023, slip op. at 51 (D.N.J. Nov. 2, 1994). Of course, the district court would have been correct had the matter been before the court on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The matter before the district court, however, was a motion for summary judgment under Fed.R.Civ.P. 56. Summary judgment is designed to go beyond the pleadings in order to assess whether a genuine issue of material fact exists and whether a trial is necessary.
 
 
 25
 Accordingly, a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, the mere fact that Orsatti's allegations, if true, state a claim is an insufficient basis for the district court to deny the officers' motion for summary judgment.
 
 
 26
 Second, the district court found that there remained an issue of material fact regarding whether the officers conducted Operation Comserv negligently. In support of its finding, the district court relied on the expert report of Richard Kobetz, Doctor of Public Administration. Dr. Kobetz opined that the state police conducted Operation Comserv in a reckless and grossly negligent manner because: (1) they did not conduct a focused investigation; (2) they did not train Mr. Black to properly operate the wireless transmitter they supplied him with; (3) they did not instruct Mr. Black to properly utilize equipment they had supplied him with; and (4) they did not supervise his criminal investigatory procedures and strategy, nor his handling of money, expenditures, and equipment. The district court held that this evidence precluded summary judgment because, in the court's view, if Orsatti were to succeed at proving that the officers carried out Operation Comserv in a negligent manner, he might convince the jury that no reasonable person in the police officers' shoes could have reasonably believed that the criminal prosecution was lawful. Orsatti, No. 91-3023, slip op. at 52. The district court's reasoning, however, was flawed.
 
 
 27
 The obligation of local law enforcement officers is to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person under investigation. Therefore, whether the officers conducted the investigation negligently is not a material fact. Indeed, for Fourth Amendment purposes, the issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.
 
 
 28
 Therefore, in order to assess whether Guzzardo and Kirvay are entitled to immunity on Orsatti's Fourth Amendment unlawful arrest claim, the district court should have focused on the information the officers had available to them, not on whether the information resulted from exemplary police work. Upon our review of that information, we find that it was objectively reasonable for the officers to conclude that they had sufficient information to believe that Orsatti had committed the crime of official misconduct.
 
 C.
 
 29
 In support of our conclusion that the officers were objectively reasonable in believing they had probable cause to arrest Orsatti for official misconduct, we turn to the elements of that offense.[2] Under N.J.Stat.Ann. 2C:30-2, Orsatti may be found guilty of official misconduct if, (1) he was a public servant at the time alleged in the complaint, (2) he committed an act relating to his office knowing the act was unauthorized, or he committed the act in an unauthorized manner, and (3) his purpose was to benefit himself or another. State of New Jersey v. Vickery, 275 N.J.Super. 648, 646 A.2d 1159, 1160 (1994). The statute does not require that the public official's "act" constitute a criminal act, only that it embody an unauthorized exercise of his official functions. N.J.Stat.Ann. 2C:30-2(a).
 
 
 30
 The information that the officers relied on to support their conclusion that probable cause existed to arrest Orsatti for official misconduct was gathered from taped conversations secretly recorded by Black, the government's confidential informant. A synopsis of the taped conversations was later placed in Kirvay's affidavit of probable cause and was presented to the New Jersey Superior Court judge in support of the request for the criminal complaint and warrant for Orsatti's arrest.
 
 
 31
 Specifically, on July 16, 1989, Black recorded a conversation between himself, Jack Wolf, a public relations agent for Pan Am World Services, Inc., and Orsatti. The conversation took place at Cousin's Country Inn in Egg Harbor Township, New Jersey. The purpose of the meeting was to discuss Black's proposal to acquire a gift shop concession at the Atlantic City Airport. Although the record is unclear, apparently Stephen Williams, an airport official, had authority to decide who, if anyone, would get the concession.
 
 
 32
 According to the tape, at the meeting Wolf, Orsatti, and Black devised a plan whereby Wolf would compose fraudulent letters. These fraudulent letters would purport to be from various citizens complaining of the lack of a gift shop at the airport and stressing the need for one. Black, in turn, would have the letters rewritten in different handwriting styles and then give the fraudulent letters to Orsatti. Orsatti, in his capacity as an Atlantic City Councilman and Chairman of the City Council Transportation Committee, would then present the letters to Williams to pressure Williams into awarding the gift shop contract to Black.
 
 
 33
 On July 18, 1989, Black recorded a second conversation with Wolf. According to the tape, Wolf gave the fraudulent letters to Black and instructed Black to deliver them to Orsatti later that day. As Wolf instructed, Black met with Orsatti in Atlantic City and again recorded their conversation. According to the tape, Black gave the fraudulent letters to Orsatti, and Orsatti indicated that he would give the letters to Williams at a meeting they had scheduled for the following day.
 
 
 34
 On July 19, 1989, New Jersey State Police detectives conducted a physical surveillance at the Atlantic City Airport and, at approximately 12:50 p.m., saw Orsatti meet with Williams. Two days later, Black called Orsatti and again recorded the conversation. According to the tape, when the conversation turned to Orsatti's July 19 meeting with Williams, the following exchange took place:
 
 
 35
 Black: At your news conference. How did things go?
 
 
 36
 Orsatti: Good.
 
 
 37
 Black: These letters work all right?
 
 
 38
 Orsatti: What?
 
 
 39
 Black: The letters work all right?
 
 
 40
 Orsatti: Yea, yea.
 
 
 41
 Black: Did you talk to our friend Williams and all?
 
 
 42
 Orsatti: He said we're having a gift shop.
 
 
 43
 Black: That's great, that's great.
 
 
 44
 Orsatti does not contend that the officers tampered with, changed, or altered the tapes in any way, nor does Orsatti contend that the officers misrepresented the text of the taped conversations in the affidavit of probable cause presented to the New Jersey Superior Court judge. Orsatti does, however, point out that Williams, in his Grand Jury testimony, denied speaking with Orsatti about the gift shop matter and also denied receiving the fraudulent letters from Orsatti. Although disconcerting, this fact is not material, because we must determine whether an arrest was objectively reasonable on the basis of the information the officers had available at the time of arrest, not thereafter.
 
 
 45
 In summary, the undisputed facts of record establish that at the time of Orsatti's arrest, the officers had tape recordings that indicated that Orsatti participated in formulating a scheme to acquire the airport gift shop concession for Black's benefit, in part by fraudulent means, i.e., forged letters from nonexistent citizens. According to the tapes, Orsatti received the fraudulent letters, and he agreed to deliver those letters to Williams, the airport official. At the time, Orsatti was acting in his capacity as an Atlantic City Councilman. Orsatti was observed speaking with Williams at the appointed time and place, and Orsatti expressly reassured Black that the letters were effective.
 
 
 46
 Under these undisputed material facts, we are satisfied that no rational jury could find that the officers were objectively unreasonable in concluding that, based on the information available to them at the time, they had probable cause to believe that Orsatti's conduct constituted the crime of official misconduct. Kirvay and Guzzardo are, therefore, immune from this claim.
 
 IV.
 
 47
 For the foregoing reasons we reverse the district court's order of November 2, 1994, insofar as it denied defendant-appellants Kirvay's and Guzzardo's joint motion for summary judgment on plaintiff-appellee Orsatti's section 1983 claim for arrest without probable cause.
 
 
 
 [1]
 The Honorable Gary L. Lancaster, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [2]
 For reasons that are unclear, Orsatti focused his appellate arguments on the elements of conspiracy to commit racketeering under N.J.S.A. 2C:41-2(d), which is the subject of his state common law malicious prosecution claim. However, Orsatti's malicious prosecution claim is not the subject of this appeal. Appellants have appealed only the district court's order rejecting their qualified immunity defense on the Fourth Amendment unlawful arrest claim