**Jennifer LINCOLN, Daniel Zimmerman, and Gregory Zimmerman, Appellants**

**v.**

**Detective Leo HANSHAW, Detective Arthur Erle, Superintendent Michael Chitwood and Upper Darby Township.**

No. 09–2683.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 10, 2010.

Filed: March 22, 2010.

Andrew F. Erba, II, Esq., Gerald J. Williams, Esq., Williams, Cuker & Berezofsky, Philadelphia, PA, for Appellants.

Suzanne McDonough, Esq., Holsten & Associates, Media, PA, for Detective Leo Hanshaw, Detective Arthur Erle, Superintentdent Michael Chitwood and Upper Darby Township.

Before: SLOVITER, ROTH and TASHIMA *, Circuit Judges.

## OPINION OF THE COURT

TASHIMA, Circuit Judge.

Appellants Jennifer Lincoln ("Lincoln"), Daniel Zimmerman, and Gregory Zimmerman appeal the District Court's grant of summary judgment in favor of Appellees Detective Leo Hanshaw, Detective Arthur Erle, Superintendent Michael Chitwood, and Upper Darby Township. We have jurisdiction under 28 U.S.C. § 1291, and we will affirm.

## I. Factual and Procedural Background

On the night of April 10, 2009, the Dollar Den store in Secane, Pennsylvania, was burglarized. (A–1052) A case of lottery scratch-off tickets was stolen. (A–1052) Lincoln, the owner of the Dollar Den, provided a list of former employees and lottery serial numbers to Detective Hanshaw and other officers who responded to the burglary report to assist them in their investigation. (A–1052) A surveillance video of former employee Barry Mapp ("Mapp") cashing in stolen lottery tickets on the night of the burglary led to his identification as the suspect. (A–1053)

Detective Hanshaw prepared a warrant for Mapp's arrest on April 26, 2006. (A–1053) That morning, Detectives Hanshaw and Erle, accompanied by Officer Robert Bales, attempted to serve the arrest warrant at Mapp's residence. (Blue 9) Although Mapp was not home, the detectives spoke to his mother and advised her that Mapp should turn himself in as soon as possible. (Blue 9) Later that day, Mapp decided to surrender and Officer Bales returned to Mapp's home to arrest him and transport him to police headquarters. (Blue 9) Officer Bales testified that while in the back of his police car, Mapp repeatedly complained, "This is Bullshit. I shouldn't be arrested for this. I had a deal with the bitch and I let her cut my face so that she wouldn't send me to jail." (A–147)

Once at police headquarters, Mapp was interviewed by Detectives Hanshaw and Erle. Mapp gave a written statement in

---

* Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

which he admitted to having burglarized the Dollar Den on April 10, 2006. He also admitted to attempting to re-burglarize the Dollar Den on April 16, 2006, Easter Day. He claimed that upon entering the Dollar Den, he was jumped by the store owner's boyfriend and his brother. (A–1043) Mapp said that the men waited for Lincoln to arrive at the store. When Lincoln arrived at the store, she made a deal with Mapp that if he allowed her to cut his face with a box cutter, she would not press charges for the burglary of the lottery tickets. (A 1043) She then allegedly sliced him and let him go.

Mapp had in fact been picked up by an ambulance bleeding from a cut on his face outside of his apartment building on April 16, 2006. He told the Ridley Township Police, who responded to reports of a stabbing victim outside of the apartment complex, that he had been injured as part of a drug deal gone bad. (A 905–08) When later accusing Lincoln of inflicting the wound, Mapp claimed to have lied to the police on the night of his injury in order to uphold his end of the bargain with Lincoln. (A 1044)

After Mapp had made his accusations against Lincoln to the Upper Darby Police, Detective Hanshaw asked her to come to the station for further discussions of the first burglary. (A383–83) At this interview, Detective Hanshaw confronted Lincoln with Mapp's accusations against her. Lincoln was accompanied to the police headquarters by her boyfriend, Daniel Zimmerman, who did not participate in the interview and sat in the waiting area.

At this time, Detective Hanshaw recognized Lincoln's boyfriend as the same Daniel Zimmerman who was the father of his wife's daughter. (A 405) Detective Hanshaw then notified his supervisor that he had a potential conflict of interest in the case, which was reassigned to Detective Erle. (A406) Detective Hanshaw, although no longer in charge of the investigation into Lincoln and the Zimmermans, continued to work on it.

On October 5, 2006, Detective Erle, with Detective Hanshaw present, interviewed Mapp again about the alleged slashing incident. (A 249–50) Mapp provided a second written statement about the incident. (A 249) He then identified Lincoln and Daniel Zimmerman from photographic lineups as two of the people who had assaulted him. (A268–69) On October 12, 2006, Detective Erle Filed affidavits of probable cause in support of thirteen criminal charges against Lincoln and Daniel Zimmerman. (A 889, 895) A judge approved the arrest warrants and Lincoln and Zimmerman were arrested shortly thereafter.

On October 26, 2006, the Upper Darby Police Department received a phone tip from Diane Murphy claiming that Gregory Zimmerman's wife had told her that he had admitted to being the third participant in the Mapp assault. (A 277) Based on this information, Detective Erle requested that Detective Hanshaw prepare a third photo array with Gregory Zimmerman in it. (A 282) Detective Hanshaw then interviewed Mapp and presented him with the photographs. Mapp identified Gregory Zimmerman as the third person who had assaulted him. On October 28, 2006, Detective Erle filed an affidavit of probable cause in support of thirteen criminal charges against Gregory Zimmerman. (A 899) A magistrate approved an arrest warrant. Several weeks later, Gregory Zimmerman was arrested.

In July of 2007, a jury acquitted Lincoln and the Zimmermans of all charges. (A1030–40)

Plaintiffs Lincoln and the Zimmermans now bring suit under 42 U.S.C. § 1983 for

violations of their civil rights. They accuse Detectives Hanshaw and Erle, as well as Upper Darby Township Superintendent of Police Michael Chitwood, of false arrest, malicious prosecution, and abuse of process in violation of plaintiffs' Fourth and Fourteenth Amendment rights. They also allege that Detectives Hanshaw and Erle conducted an investigation so unreasonable and tainted by conflicts of interest that it violated their substantive due process rights. They further accuse all defendants of a conspiracy to violate their civil rights. Plaintiffs also allege that Superintendent Chitwood made statements to the media in violation of their Sixth and Fourteenth amendment rights.

In addition, plaintiffs sued Upper Darby Township, claiming that its lack of a policy or practice for adequately handling conflicts of interest between investigating officers and criminal suspects was responsible for violations of their civil rights under *Monell.*[1] Finally, they allege state law claims for false arrest, malicious prosecution, and false light invasion of privacy. (A 68–72)

The District Court granted summary judgment to defendants on all counts.

## II. Standard of Review

Our review of a grant of summary judgment is plenary. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n. 2 (3d Cir.2005). "Summary judgment is appropriate only where, drawing all inferences in favor of the nonmoving party, 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. PROC. 56(c)).

Defendants, Detectives Hanshaw and Erle, as well as Superintendent Chitwood, have pled qualified immunity. (A94) "The

determination of immunity is a question of law," which is reviewed de novo by this Court. *Id.* Qualified immunity shields government officers performing discretionary functions from suits seeking federal civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). An officer is entitled to qualified immunity if, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged do [not] show the officer's conduct violated a constitutional right," or if the right violated was not clearly established at time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, — U.S. —, —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

## III. Analysis

◼ The District Court held that plaintiffs had not adduced sufficient facts to establish a prima facie case of malicious prosecution or false arrest under federal or state law. (A19–32) In order to prevail on these claims, plaintiffs must demonstrate that the criminal proceedings against them were initiated without probable cause or, under *Wilson v. Russo*, 212 F.3d 781 (3d Cir.2000), "that [defendants] recklessly disregarded the truth in their warrant application *and* that a warrant application based on what [defendants] should have told the judge would have lacked probable cause." *Id.* 786; *see Sands v. McCormick*, 502 F.3d 263, 266

---

1. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

(3d Cir.2007). Plaintiffs have done neither.

The District Court concluded, and we agree, that the warrant applications establish probable cause on their face. Plaintiffs do not appear to challenge this ruling on appeal. The arrest warrant applications recount the statements of Mapp, the alleged victim of and eyewitness to the crime, that he was in fact assaulted by Lincoln and the Zimmermans, and identified them as his attackers. (A 891–902) The detectives' reasonable belief that an offense had been committed was buttressed by the fact that Mapp had, in fact, been treated for lacerations to the face on the date he said he was attacked, a fact that was included in the arrest warrant applications. Because there is no evidence that Mapp fabricated his story, a reasonable jury could not find that the detectives lacked probable cause to arrest Lincoln and the Zimmermans.

▆ Plaintiffs argue that they can still prevail because the detectives "knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and "such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997). Plaintiffs contend that the detectives made six such omissions from their applications for the arrest warrants. First, they argue that the detectives should have disclosed the fact that Detective Hanshaw was raising a daughter fathered by Daniel Zimmerman for whom Daniel had failed to pay child support. Plaintiffs argue that this relationship created a conflict of interest and a potential motivation for Detective Hanshaw to harbor animus against Daniel Zimmerman, his girlfriend Lincoln, and his brother. (Blue 34) Second, they contend that the detectives should have disclosed a witness statement given to the Ridley Township Police on the night Mapp was hospitalized that he had heard a fight "outside" of the Dollar Den as opposed to within it, where Mapp later claimed he was assaulted. (Blue 35). Third, they contend that the detectives should have included the inconsistent physical descriptions of the assailant later believed to be Gregory Zimmerman given by Mapp during the investigation. (Blue 38) Fourth, they believe that the application should have included the fact that police suspected Gregory Zimmerman to be the third assailant and his photograph was included in the line-up shown to Mapp because of a hearsay tip over the telephone from Diane Murphy. Fifth, plaintiffs argue that the warrant applications should have included the fact that Mapp had an opportunity to fabricate his allegations against Lincoln and the Zimmermans during the hours when the detectives first attempted to arrest him and instead spoke to his mother at his home, and when he surrendered himself to police. Sixth, plaintiffs argue that the affidavit should have discussed the lack of a forensic investigation into the alleged crime.

In order to succeed on this theory, the plaintiffs must demonstrate that if the facts they complain were improperly omitted from the applications for the arrest warrants had been included in them, the affidavits would not have established probable cause. *See Wilson*, 212 F.3d at 789. This the plaintiffs cannot do. As discussed above, the warrant applications establish probable cause on their face. Even assuming arguendo that Detective Erle acted with reckless indifference for the truth in omitting the facts plaintiffs cite, had he included all six, their presence would not have defeated a finding of probable cause. Plaintiffs have therefore failed as a matter of law to come forward with a prima facie

case of false arrest and malicious prosecution.

■ Plaintiffs further contend that the investigation leading to the detectives' determination that probable cause existed was so inadequate as to violate their substantive due process rights under the Fourteenth Amendment. As shown above, however, probable cause was established as a matter of law at the time that Mapp, as a complaining victim who had suffered an injury, made the allegations against Lincoln and the Zimmermans and correctly identified them. At that time, "the facts and circumstances within [Detective Erle's] knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense has been ... committed by the persons to be arrested." *Orsatti v. N.J. State Police,* 71 F.3d 480, 483 (3d Cir.1995). The officers had no further constitutional duty to continue their investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination. *See Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Fourteenth Amendment imposed no obligation on officers to uncover further evidence once probable cause has been established at the time of Lincoln's and the Zimmermans' arrests. *Id.* Thus, plaintiffs have not shown that a constitutional violation occurred, much less that the right assertedly violated was clearly established, sufficient to defeat qualified immunity. The District Court correctly granted summary judgment to defendants on this claim.

As plaintiffs have failed to establish that any of Upper Darby Township's officers violated plaintiffs' civil rights, their *Monell* claim also must fail. *See Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3d Cir.1989).

Finally, plaintiffs failed to introduce even a scintilla of evidence that a conspiracy existed between Detectives Hanshaw and Erle to violate their civil rights. Plaintiffs, as the nonmoving party, are entitled to have all reasonable inferences drawn in their favor at the summary judgement stage. In the absence of any evidence that there was a meeting of the minds to achieve the alleged conspiracy's objectives, however, they are not entitled to an inference that their bare allegations create an issue of material fact for trial.

For the above-stated reasons, the judgment of the District Court will be AFFIRMED.