NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4590
_____

JAMES E. BOOTHBY,

Appellant

v.

GLENN C. DRAKE, II and JACOB ROTHERMEL

_____

On appeal from the United States District Court
For the Middle District of Pennsylvania
(M.D. 09-cv-1399-JEJ)
District Judge: Honorable John E. Jones III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2011

BEFORE: SLOVITER, FUENTES, and FISHER, Circuit Judges

(Opinion Filed: August 4, 2011)

FUENTES, Circuit Judge.

    James Boothby appeals from an order granting summary judgment to

Pennsylvania State Troopers Glenn C. Drake, II and Jacob Rothermel (collectively

"defendants") in an action under 42 U.S.C. § 1983 that alleges false arrest or

imprisonment and malicious prosecution, in violation of plaintiff's Fourth Amendment rights. For the reasons set forth below, we will affirm.

## I.

We write solely for the parties and therefore discuss only the facts necessary to explain our decision. Boothby began working for Potter County Human Services ("the County") in 1987. In 2008, he was suspended by the County because he faced a non-work-related animal cruelty charge.[1] Boothby was concerned about the possibility of termination, so in July of 2008, he requested, and the County permitted, his early retirement.[2] Had he not faced disciplinary action, Boothby would not have retired.

On September 5, 2008, Boothby was scheduled to go to the County building to retrieve his belongings and return property. Prior to his arrival, however, employees at the County building observed what appeared to be a pipe bomb in Boothby's cubicle. The Pennsylvania State Police were contacted, and the building was evacuated.

Pennsylvania State Trooper Rothermel arrived at the building, where County employees described the device inside as a bomb. Rothermel entered the building and proceeded to a filing cabinet in Boothby's cubicle, where he observed two pieces of black metal taped together with a nine-volt battery and wires. Rothermel noticed that the window next to the cabinet was open. Rothermel removed the device from the building and placed it in a field for inspection. Later, the bomb squad evaluated the device and

---

[1] On July 15, 2008, Boothby was cited for "cruelty to animals" by the Coudersport Boro Police.
[2] Boothby's retirement was made official on August 13, 2008.

observed fresh cut marks on the metal and new tape. The bomb squad then blew the device up, confirming that it was free of any explosive material.

When Boothby arrived at the County building, Rothermel placed him in custody. Boothby was advised of his *Miranda* rights, and he agreed to speak with Trooper Drake about the device. Boothby told Drake that he had constructed the bomb device 4 or 5 years earlier as a "prop" for a work-place safety training exercise and that he had given a presentation on it. Boothby said that some of his former co-workers would confirm this. Boothby also said that the device had been on his filing cabinet under paperwork for the past 4 or 5 years.

During the investigation, the Pennsylvania State Police interviewed every employee working at Potter County Human Services. Not one employee had ever seen the pipe bomb device before September 5, 2008, and none recalled Boothby giving a presentation. The interviewed employees stated that it was not Boothby, but rather a different employee, who made the bomb-like devices for the safety drills, and that the devices made for the drills were not intended to look realistic. The Troopers also interviewed the first employee to arrive at the building that day, and she reported that when she arrived, the front door had been unlocked. Additionally, some of Boothby's former co-workers indicated that he was upset about having to retire early.

Based on this information, the defendants prepared an affidavit of probable cause to support charges against Boothby of violating 18 Pa. C.S.A. § 3302, prohibiting causing or risking a catastrophe, and 18 Pa. C.S.A. § 5503, prohibiting disorderly conduct. In the affidavit, the defendants specifically noted that Boothby's statements that others would

3

confirm he made the device as a safety prop and that he gave a presentation regarding the device were not corroborated. Boothby was arrested and arraigned. He made bail and was released the following day. At a preliminary hearing on October 6, 2008, the magisterial district judge found a lack of probable cause and all charges were dismissed. On July 20, 2009, Boothby filed suit against the defendants under 42 U.S.C. § 1983, alleging false arrest or imprisonment and malicious prosecution, in violation of his Fourth Amendment rights.

On November 9, 2010, the District Court granted summary judgment to the defendants, finding on the crucial issue of probable cause that there was no material issue of fact that the defendants had ample probable cause to arrest and charge Boothby. This timely appeal followed.[3]

We exercise plenary review of a grant of summary judgment. Summary judgment is appropriate where "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute of material fact is a genuine issue when there is evidence sufficient to support a reasonable jury returning a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We view the record in the light most favorable to Boothby – the non-moving party. *Id.*

**II.**

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction under 28 U.S.C. § 1291. *See W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 311 (3d Cir. 2003).

The District Court properly determined that the false arrest or imprisonment and malicious prosecution claims turn on whether the defendants had probable cause in arresting and charging Boothby.[4] To prove false arrest or imprisonment, the plaintiff must establish that *probable cause was lacking* during the arrest and related detention. *Gorman v. Twp. of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995). To prove malicious prosecution, the plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding *without probable cause*; (4) the defendants acted maliciously for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

It is well-established that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). Probable cause "requires more than mere suspicion[.]" *Orsatti*, 71 F.3d at 482. However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person

---

[4] Accordingly, our analysis of false arrest or imprisonment and malicious prosecution also turns on whether probable cause existed at the time Boothby was arrested.

to be arrested." *Orsatti*, 71 F.3d at 483; see also *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The issue of whether there is probable cause is generally a question for the jury; however, "a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding' and may enter summary judgment accordingly." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quoting *Sherwood v. Mulvihill*, 133 F.3d 396, 401 (3d Cir. 1997)).

### III.

On appeal, Boothby first argues that because there was no actual explosive device, there could be no probable cause to initiate criminal proceedings under 18 Pa. C.S.A. § 3302. The statute provides in pertinent part:

> (a)Causing catastrophe: A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building…or by any other means of causing potentially widespread injury or damage…commits a felony of the first degree if…intentionally…or a felony of the second degree…if recklessly.

> (b)Risking catastrophe: A person is guilty of a felony of the third degree if he …creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

Clarifying the statute, the Pennsylvania Supreme Court held that "the means by which the catastrophe is risked …need not be specifically enumerated…nor must it be *per se* dangerous in the absence of other factors. On the contrary, it is only required that the 'means' in any given case have the potential to cause a catastrophe." *Commonwealth v.*

6

*Karetny*, 880 A.2d 505, 517 (Pa. 2005). There is no question that a fake bomb, constructed to look real, and initially believed to be real, constitutes a means to risk causing a catastrophe. The mass evacuation of a government building, as occurred here, most certainly has the potential to cause a catastrophe. In this light, the District Court did not err.

Boothby next argues that the defendants did not have probable cause to arrest and charge him because he had no access to the building after the building administration changed the entry codes upon his retirement. This argument, however, lacks merit, because the record establishes that Boothby had potentially two methods of access to the building, the unlocked door and the open window, of which the defendants had been informed.

Boothby's next assertion on appeal is that there was no probable cause to arrest and charge him because Trooper Rothermel failed to appear for a subsequent preliminary hearing. This is wholly without merit. As previously stated, probable cause analysis turns on the objective facts available to the officers on the day of the arrest. Therefore, the District Court correctly held that Rothermel's absence from a future hearing has no bearing on a probable cause analysis that is properly focused on the date of arrest.

Finally, Boothby argues that there was a lack of probable cause because "everyone knew it was not a bomb." Boothby bolsters this argument by stating that Rothermel went into the building and retrieved the device, prior to the arrival of the bomb squad, because he knew it was fake and not dangerous. The record, however, does not support Boothby's claim. The Pennsylvania State Police responded to an emergency report of a

7

bomb inside the County building. Upon arrival, Rothermel was informed by County employees that there was a bomb inside. None of the employees said that they believed the device was not real.[5] Rothermel then observed what appeared to be an actual bomb. The device was not confirmed to be "fake" until after the bomb squad detonated it. Therefore, Boothby's claim that everyone knew the device was not an actual bomb is contrary to the record and does not alter the probable cause analysis.

In sum, the District Court's probable cause analysis appropriately focused on the information the defendants had available to them on September 5, 2008. *See Marasco*, 318 F.3d at 514. The defendants responded to the report of a bomb inside a government building. A suspicious device was located and removed from the cubicle of a former employee who had recently been forced to accept an early retirement. Interviews with County employees did not substantiate that the device was known to be a safety prop. In fact, no one reported ever seeing the device prior to that morning. The building's front door had reportedly been unlocked that day, and a window next to the device was open. Based on this record, the District Court was correct in finding that no genuine issue of material fact existed concerning whether the defendants had probable cause to arrest and charge Boothby.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Boothby cites preliminary hearing testimony and subsequent newspaper interviews with some of his former co-workers to support his assertion that no one believed the device was a bomb. However, on the date of the incident, none of Boothby's co-workers told the defendants that they knew the device was not a real bomb.