NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3674
_____

LUIS BURGOS-CINTRON
a/k/a LUIS BURGOS,

Appellant

v.

AUGUSTUS NYEKAN, JR., Individually & in his official capacity as a Trooper in the
New Jersey Division of State Police;
JAMES SOUTH, Individually & in his official capacity as a Detective Sergeant First
Class in the New Jersey Division of State Police-Strategic Investigations Unit;
MARK CUNARD, Individually & in his official capacity as a Detective Sergeant in the
New Jersey Division of State Police-Strategic Investigations Unit;
RICHARD BUMBERA, Individually & in his official capacity as a Detective Sergeant in
the New Jersey Division of State Police;
NEW JERSEY STATE POLICE;
NEW JERSEY DIVISION OF STATE POLICE-STRATEGIC INVESTIGATIONS
UNIT; CAMDEN CITY POLICE DEPARTMENT;
CITY OF CAMDEN; STATE OF NEW JERSEY; JOHN DOES 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 1-09-cv-04470)
Honorable Joseph H. Rodriguez, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 14, 2012

BEFORE:  GREENAWAY, JR., GREENBERG, and COWEN, Circuit Judges

(Filed: January 11, 2013)
_____

OPINION OF THE COURT
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

This matter comes on before this Court on an appeal from an order entering summary judgment on September 19, 2011, in accordance with the opinion of the District Court of that day. The record on the motion for summary judgment showed that the following happened. In 2001 plaintiff, now appellant, Luis Burgos-Cintron, was arrested on drug charges. At that time in an unsuccessful effort to avoid the charges, he falsely gave his name as Luis Santiago and as a result was arrested under that name. Years later on September 15, 2007, an apparently real Luis Santiago and Joseph Thompson were involved in an aggravated assault on Kareem Parker in Camden, New Jersey. During the assault Santiago fired a weapon at Parker but missed. The Camden police responded to the incident and, when questioned, Parker identified the assailants as Luis Santiago and Joseph Thompson. The police, however, did not make an arrest at that time as they could not locate the assailants. They, however, did find pistol casings confirming that a weapon had been fired as Parker had claimed.

Within one week of September 15, 2007, the New Jersey State Police took over the investigation of the case. Trooper Augustus Nyekan and Sergeant Richard Bumbera, the only appellees on this appeal, were in charge of the investigation and interviewed Parker. Parker reiterated to the state police that Luis Santiago and Joseph Thompson had been the assailants and said that he had attended Camden High School with them and

2

knew them well. In particular, Parker said that "I know them my whole life" and "I know who they are." App. at 333.

Through the use of a surveillance tape the state police identified George Brown, Sr. as a possible witness to the incident. Brown did witness the incident and indicated that Santiago and Thompson were the assailants. Like Parker, Brown said he had gone to Camden High School with Santiago and Thompson and knew them well. Indeed, Burgos-Cintron had gone to Camden High School but had done so before Parker and Brown were students there so the Luis Santiago with whom they had gone to high school was not Burgos-Cintron.

At the time that the state police interviewed Parker and Brown the police showed them a picture of Burgos-Cintron taken in the aftermath of his arrest for the 2001 drug charges when he identified himself as Luis Santiago. Parker and Brown identified Burgos-Cintron from the picture as the person who shot at Parker. Nevertheless, when the state police later arrested Burgos-Cintron, he insisted that he was not guilty and asserted that they were arresting the wrong person. Finally, on July 9, 2008, after Burgos-Cintron, who had been unable to make bail, had been detained for about ten months, Parker again saw his picture before a hearing in the criminal case. At that time Parker recanted his earlier statement implicating Burgos-Cintron as the assailant and said his previous identification of him had been incorrect. A New Jersey state court subsequently dismissed the case against Burgos-Cintron and he was released. He then initiated this litigation against individuals and entities involved in his arrest and detention.

Most of the original defendants in this case are not parties to this appeal because this case was dismissed by stipulation in the District Court against all the defendants except for Nyekan and Bumbera. Moreover, the claims against Nyekan and Bumbera are now limited to those asserting false arrest, false imprisonment, and malicious prosecution. Burgos-Cintron has packaged these three remaining claims as Fourth Amendment constitutional claims under 42 U.S.C. § 1983. Thus, in our procedural discussion we only need explain that Nyekan and Bumbera moved for summary judgment contending that they had probable cause for making the arrest leading to Burgos-Cintron's arrest and detention and thus could not be liable on any of his three claims.

The District Court granted their motion as it pointed out that appellees "relied on information provided by the victim and eyewitness who both claimed to have personal knowledge of the suspect [and appellees] had no reason to doubt the veracity of the identification presented." App. at 14. Burgos-Cintron has appealed contending in his opening brief that "the District Court err[ed] in granting summary judgment in favor of [Nyekan and Bumbera] finding that as a matter of law, [they] had a reasonable belief that there was probable cause to arrest Burgos-Cintron." Appellant's br. at 6. Burgos-Cintron does not contend that appellees could be liable if they had probable cause for his arrest. The appellees agree with this legal principle, the application of which is at the center of this appeal.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review on this appeal and

4

thus must affirm the order for summary judgment if there is no dispute of material fact and appellees are entitled to a judgment as a matter of law. See Shaver v. Siemens Corp., 670 F.3d 462, 470 (3d Cir. 2012).

In Burgos-Cintron's reply brief he reiterates the position he took in his opening brief by stating that "the arresting officers lacked probable cause to arrest because the identification was not reliable." Appellant's reply br. at 3. He then goes on to state that "[t]he absence of taint, or conversely the presence of reliability, must be determined from the totality of the circumstances in each particular case." Id. at 6 (citing State v. Cherry, 674 A.2d 589, 597 (N.J. Super Ct. App. Div. 1995)). We agree that the facts of each case must be examined in a probable cause analysis. Burgos-Cintron cites our opinion in Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d. Cir. 1995), for the principle that in determining whether there was probable cause for an arrest "the issue is whether [the] information [on which the police relied] would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Appellant's br. at 20.

Burgos-Cintron does not contend that the appellees lacked probable cause to believe that an offense had been committed and thus we focus our probable cause analysis on the question of whether as a matter of law the appellees had sufficient basis to arrest him as an assailant. After our review of the case we are satisfied that even applying that exacting standard, appellees did have probable cause to arrest Burgos-Cintron. In reaching our conclusion we first rely on the undisputed fact that Parker and Brown originally positively identified one assailant as a person named Luis Santiago and

5

even now in his brief Burgos-Cintron does not dispute that the name of one assailant was Luis Santiago. What Burgos-Cintron does contend, and we accept this contention, is that there are numerous persons named Luis Santiago in the Camden area and when they arrested him appellees were aware of this fact. The presence of persons with that name leads Burgos-Cintron to contend that an identification of an assailant based on the person being arrested having the name Luis Santiago and a Luis Santiago having been identified as an assailant would not give probable cause for his arrest.

Though we are affirming the order for summary judgment we agree with Burgos-Cintron that appellees would not have had probable cause to arrest him simply because he had called himself Luis Santiago some years earlier and Parker and Brown identified a person named Luis Santiago as the assailant. But in arresting Burgos-Cintron appellees did not rely merely on a misidentification resulting from the use of a name for they showed Burgos-Cintron's picture to Parker and Brown who both identified the person in the picture whatever his name as an assailant. Inasmuch as both Parker and Brown who claimed to know Luis Santiago very well said that the Luis Santiago that they knew from high school was an assailant, and indicated that the person in the photograph was an assailant, appellees had probable cause to arrest Burgos-Cintron. We reach this conclusion even though there was some information available to them at the time of the arrest tending to suggest that Burgos-Cintron was not the assailant as there was a significant difference between the physical description that Parker and Brown gave of the assailant and a correct physical description of Burgos-Cintron.

We realize that appellees did not show an array of pictures of persons named Luis Santiago or even a more general photo array to Parker and Brown before appellees accepted Parker's and Brown's identification of Burgos-Cintron as an assailant and arrested him. But this case was not one in which the victim was not acquainted with the defendant but was asked to identify the person who committed an offense from a photo array. Thus, much of what has been written in the many opinions about the possible unfair suggestive aspects of photo arrays is immaterial in this case for usually the person making the identification does not claim to know the person he is identifying.

Finally, we have not overlooked Burgos-Cintron's argument that appellees did not comply with the New Jersey attorney general's guidelines for photo arrays intended to ensure the accuracy of photo identifications. We see no reason to believe that those guidelines are intended to deal with a situation in which the person making the identification previously had identified a particular individual as the perpetrator of an offense and he is shown a single photograph merely to confirm his earlier identification. In any event, Burgos-Cintron does not contend that these guidelines which, after all merely deal with police procedure, have the force of law. Overall, we are satisfied that as a matter of law appellees had probable cause to arrest Burgos-Cintron even though sometimes the determination of whether there is probable cause for an arrest is a factual question for a jury. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000). Therefore, inasmuch as all of Burgos-Cintron's bases for liability depend on appellees lacking probable cause for his arrest we will affirm the order of September 19, 2011, granting appellees summary judgment.