**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1034
_____

SERGEANT AARON GREEN,

Appellant

v.

CITY OF PHILADELPHIA, d/b/a Philadelphia Police Department

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-03156)
District Judge: Honorable Joshua D. Wolson
_____

Submitted January 19, 2022

Before: JORDAN, RESTREPO, and PORTER, *Circuit Judges*

(Filed: April 20, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

Appellant, Aaron Green, asserts a claim against appellee, the City of Philadelphia, under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause and a disparate impact claim under Title VII of the Civil Rights Act ("Title VII"). On appeal, Green challenges the District Court's grant of the City's Motion for Summary Judgment. For the reasons that follow, we affirm.

## I.      Factual and Procedural History

The Philadelphia Police Department ("PPD") randomly drug-tests its officers. Ten percent of officers selected for testing must submit both urine and hair samples, which detect a much longer period of drug use. From 2014 to 2019, the PPD administered hair tests to 7,900 African American officers, 13,170 Caucasian officers, and 96 officers who self-identified as "other." Three African American officers, one Caucasian officer, and one "other" officer tested positive for cocaine during this period.

Green was an officer with the PPD from 1991 to 2018, rising to the rank of sergeant. In 2018, a hair sample taken from Green's chest tested positive for cocaine and cocaine metabolites. The accompanying urine sample tested negative but was diluted below acceptable levels, which Green attributed to the alleged diuretic effects of a prescription medication. Two subsequent retests returned positive hair tests and negative urine tests. Green's union representative advised him to retire from the police rather than be fired, and he did so on November 21, 2018.

On September 23, 2019, Green filed a lawsuit claiming that the PPD's use of hair testing has a disparate impact on African American officers in violation of Title VII and the Constitution's Equal Protection Clause. After discovery, Green presented an expert report by a forensic pathologist, Dr. William Cox, who opined that hair testing may be unreliable due to the risk of external contamination.

The City presented an expert report by a toxicologist, Dr. Leo Kadehjian. He opined that hair testing was well-studied in the scientific community; several large studies found no statistically significant difference in rates of positive hair tests between African Americans and Caucasians. Further, he explained that the City's testing method was consistent with scientifically accepted methods and therefore reliable. In Dr. Kadehjian's view, the possibility that Green's positive test came from external contamination was minimal because his hair sample came from his chest and contained a high concentration of cocaine metabolites. Moreover, Green's urine test was eleven times more diluted than expected and thus did not cast doubt on the validity of the positive results of the hair tests.

Dr. Cox retracted his report after reading Dr. Kadehjian's report and the transcript of Green's deposition for the first time. He specifically noted that the sample from Green's chest all but eliminated the risk of external contamination. Further, he noted that Green's prescription medication did not have diuretic properties and that his test was likely positive because he had used cocaine.

Green then presented a second expert report by Dr. Sol Bobst, a toxicologist. Dr. Bobst opined that hair testing is biased because the melanin in the hair of African

3

Americans creates a longer-lasting risk of environmental contamination and can lead to false positives. Green also deposed Dr. George Hayes, the City's physician. Dr. Hayes testified that the City was aware of the possibility of environmental contamination causing a racial bias in hair testing. However, he noted his beliefs that the City's hair washing procedure nullified such risk, and that the City's hair testing did not create a higher likelihood of positive tests for African American officers.

The City moved for summary judgment on both claims, which the District Court granted. For the Title VII claim, the Court found that Green failed to make out a prima facie case of a disparate impact because he did not offer a statistical analysis showing an actual disparate impact. For the Equal Protection claim, the Court found that Green failed to show that he was treated differently than Caucasian officers and failed to show intentional discrimination. Green timely appealed the District Court's ruling to this Court.

## II. Legal Standard

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo, applying the same standard as the District Court. *Andrews v. Scuilli*, 853 F.3d 690, 696 (3d Cir. 2017) (citations omitted). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed R. Civ. P. 56(a). We will reverse a district court's grant of summary judgment only "when we conclude that material facts

4

are in dispute, or when we determine that the undisputed facts—viewed in a light most favorable to the non-moving party—could objectively support a jury's verdict in favor of the non-moving party." *Andrews*, 853 F.3d at 696 (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

## III.  Discussion

As the District Court found, Green failed to offer any statistical analysis showing a true disparate impact, and he failed to show that the City's use of hair tests is intentionally discriminatory.  He therefore failed to carry his burden to present evidence of a triable issue of fact on either claim.  Accordingly, we affirm the District Court's grant of summary judgment in favor of the City.

### A.  Green's Title VII claim fails

Title VII makes it unlawful for an employer to discriminate against an employee based on their race, color, religion, gender, or national origin.  42 U.S.C. § 2000e–2(a)(2).  Plaintiffs can show that facially neutral employment practices are discriminatory if they have a disparate impact on a protected class.  *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009).  Disparate impact claims follow a three-step burden-shifting framework. *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).  First, the plaintiff must establish a prima facie case of disparate impact by "demonstrat[ing] that application of a facially neutral standard has caused a significantly discriminatory . . . pattern." *Id.* (internal quotation marks and citations omitted).  We agree with the District

Court that Green has failed to make a prima facie case, so we will not proceed to steps two and three.[1]

Establishing a prima facie case requires the plaintiff to "prove a significant statistical disparity and to 'demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking.'" *Id.* (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 643, 657 (1989)). Mathematical certainty is not required to prove a causal link, but "statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Meditz v. City of Newark*, 658 F.3d 364, 371 (3d Cir. 2011) (quotation marks and citation omitted).

Green has identified an employment practice—the use of hair tests to screen for drug use—but has failed to offer anything more than raw statistical data to prove that this practice has caused a disparate impact in the rates of positive tests for African American officers. The statistics Green proffered indicate that .038% of African American officers, .008% of Caucasian officers, and 1% of officers identifying as "other" had positive test results. These numbers reveal nothing about the rate of false positives and do not show a disparate impact without further statistical analysis using accepted measures of statistical significance. *Meditz*, 658 F.3d at 372–73. Without statistical analysis, it is impossible

---

[1] If the plaintiff makes a prima facie showing, the burden shifts to the employer to show that the challenged practice is job-related and consistent with a business necessity. *Id.* at 477. If the employer shows a legitimate business justification, the burden shifts back to the plaintiff to demonstrate that alternative practices exist that could fulfill the same business purpose with a less discriminatory impact. *Id.* We need not discuss the legitimate business justification for hair testing or alternative practices because Green's claim fails at the first step of the analysis.

for a jury to reasonably conclude that the difference in the raw percentages is caused by the City's use of hair tests rather than a simple product of chance.[2]

Green argues that he can establish a prima facie case based on the statistics and testimony of his expert witness, Dr. Bobst, who claimed that hair tests "cause[] racial disparity for African Americans." App. 1202. However, as the District Court pointed out, Dr. Bobst's testimony only suggests that hair testing has a potential risk of bias generally. His testimony does nothing to show that the PPD's use of hair testing has actually had a disparate impact on African American officers. Without any evidence of causation offered by Green or his expert, the raw statistics and Dr. Bobst's testimony cannot establish that the PPD's use of hair tests has disparately impacted African American officers. Thus, Green has failed to bring forth concrete evidence sufficient to establish a prima facie case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We therefore affirm the District Court's grant of summary judgment in favor of the City on Green's Title VII claim.[3]

---

[2] It is possible for a plaintiff to make a prima facie case based on statistics alone and without statistical analysis, but that is only in rare cases when there is a "significant statistical disparity" between classes. *Ricci*, 557 U.S. at 587. Green cites to cases from the First Circuit for this proposition, but this is not a "singularly compelling factual context," in which "the logical force of the conclusion that the numbers suggest" is obvious. *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 604–05 (1st Cir. 1995).

[3] Green cites to a case from the First Circuit, *Jones v. City of Boston*, 752 F.3d 38 (1st Cir. 2014), where the Court held that a plaintiff presented a prima facie case of disparate impact based on the Boston Police Department's use of hair tests. *Id.* at 53. *Jones* is distinguishable from Green's case because the plaintiff and the Court in *Jones* relied on a sophisticated statistical analysis involving a set p-value and standard deviations. *Id.* at

7

**B. Green's Equal Protection claim fails**

We also affirm the District Court's grant of summary judgment in favor of the City on Green's Equal Protection claim. To establish a claim under § 1983 for a violation of the Equal Protection Clause, plaintiffs must show that (1) they "received different treatment from that received by other individuals similarly situated," and (2) the different treatment was purposefully discriminatory. *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

Green's claim fails on both prongs. As discussed above, Green has failed to provide statistically significant evidence showing that the hair tests caused a disparate impact on African American officers. Moreover, the City administered the same tests to African American and Caucasian officers and subjected every officer to the same punishment if they failed. Green therefore fails to show that he and other African American officers were treated differently from similarly situated Caucasian officers.

Green also fails to show a triable issue of the City's purposeful intent to discriminate. Showing purposeful discrimination requires more than proof of a disparate impact—it requires a plaintiff to provide additional "indicia of purposeful discrimination." *Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993). These indicia of purposeful discrimination must imply that the City performed the hair tests "at

---

44–48. Green and his expert, on the other hand, relied simply on raw statistics and generalized opinions about the possible bias in hair tests.

8

least in part 'because of,' not merely 'in spite of,' [their] adverse effects upon an identifiable group." *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (citations omitted).

Green has provided no evidence that the City uses hair testing because of its alleged discriminatory effect on African American officers. For this claim, he relies substantially on Dr. Hayes's admission that the City was aware of a possible racial bias when it first began hair testing. However, Dr. Hayes also testified to his beliefs that the City's washing procedures eliminated that risk and that there was not a trend of bias in the City's testing procedures. Moreover, the awareness of a mere possibility of bias by one non-policy-making official does not prove that the City adopted the policy *because of* a discriminatory effect or with a discriminatory intent. *See id.* Absent any evidence that the City knew of a racial bias and continued to use the hair tests because of that bias, Green cannot show purposeful discrimination and thus cannot present a triable issue on his Equal Protection claim.

## IV.     Conclusion

Green has failed to provide sufficient evidence to present a triable issue on either of his claims. We therefore affirm the District Court's grant of summary judgment in favor of the City.